Razel Dvora **WALDMAN** et al.,
Plaintiffs, Appellants,

v.

**UNITED STATES** of America,
Defendant, Appellee.

No. 5016.

United States Court of Appeals
First Circuit.

Jan. 13, 1956.

Jack H. Backman, Boston, Mass., with whom Max Kabatznick, Boston, Mass., was on brief, for appellants.

Gael Mahony, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the plaintiffs from a judgment entered May 10, 1955, in the United States District Court for

the District of Massachusetts dismissing with prejudice and without costs the plaintiffs' substitute complaint.

This action was commenced July 6, 1949, on three Government Life Insurance (converted) policies for total and permanent disability benefits. One of the present plaintiffs, Razel Dvora Waldman, is the beneficiary under two of the policies, and the other plaintiff, Elieser Don Waldman, is the beneficiary under the third policy, having been substituted for the original party plaintiff, Harris Z. Waldman, now deceased.

The plaintiff, Razel Dvora Waldman, in Count I of the substitute complaint, alleges that Harris Z. Waldman during his military service had been issued a policy of War Risk Insurance by the defendant in the sum of $10,000; that on December 1, 1923, he converted a portion thereof to the extent of $3,000, receiving United States Government Life Insurance policy No. K430,660 which shows Razel Dvora Waldman as beneficiary; that the policy provides in the event Harris Z. Waldman should suffer permanent and total disability that the defendant would pay him a certain amount monthly; that Harris Z. Waldman did in fact become permanently and totally disabled while the converted policy was in effect; that Harris Z. Waldman made claims for payments under the policy by letter dated and mailed on or about December 13, 1930; that the claim was denied on June 1, 1949; and that any monthly payments due Harris Z. Waldman under the policy are payable to the beneficiary.

In Count II the plaintiff, Razel Dvora Waldman, made similar allegations with respect to United States Government Life Insurance policy No. 514,151 in the sum of $3,000.

In Count III the plaintiff, Elieser Don Waldman, made similar allegations with respect to United States Government Life Insurance policy No. K749,350 in the sum of $4,000.

In its answer to the plaintiffs' substitute complaint, the defendant set forth as its first defense that the action was barred by the statute of limitations. As part of its second defense the defendant denied, among other allegations, that Harris Z. Waldman had ever made a claim by letter dated and mailed on or about December 13, 1930.

Subsequently the defendant amended its answer to the plaintiffs' substitute complaint alleging:

"The defendant denies the allegations contained in paragraph 7 of Count I. Further answering said paragraph the defendant alleges that an unsigned letter dated December 13, 1930, was received in the Veterans Administration in which letter a claim for insurance benefits was indicated, but that, if such letter did constitute a claim for insurance benefits, such claim was thereafter abandoned by Harris Z. Waldman; that on February 10, 1949, an informal claim was filed on his behalf; and that on March 14, 1949, a formal claim was filed in which total permanent disability was alleged as of November 14, 1930, which claim was denied by letter dated June 1, 1949."

By motion brought under Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the defendant requested and was granted a separate trial of the issues of the statute of limitations and abandonment.

In December, 1930, the three policies were in full force and effect. They provided for the payment of benefits to the insured if he were to become permanently and totally disabled while the policies were in effect.

Under date of December 13, 1930, the insured sent to the Veterans Bureau an unsigned, hand-written letter in which he claimed permanent and total disability benefits under the above mentioned policies. On February 17, 1931, a second and similar claim was made, this time on a special Government form which was signed by the insured. Under date of April 24, 1931, more than

four months after his original application, the Veterans Administration received an application for reinstatement of the policies, which had lapsed in the interim for non-payment of premiums, on which the insured, in reply to the question "Are you now permanently and totally disabled?" answered "No."

On the following dates the insured made identical negative responses to the same question in seeking reinstatement of his policies: April 20, 1933, November 11, 1935, August 14, 1936, October 11, 1936, February 18, 1937, May 24, 1938, July 30, 1938, February 23, 1939 and March 17, 1939.

Thereafter the three policies lapsed for non-payment of premiums. Each policy had a cash reserve value sufficient to automatically purchase extended insurance: K430,660 through August 3, 1941; K514,151 through January 21, 1941, and K749,350 through November 4, 1939. The three policies were not again reinstated.

The Government introduced no evidence to indicate that it took any action of any kind upon the claim filed by Harris Z. Waldman on December 13, 1930 and February 17, 1931—not even an acknowledgment that either of these two applications had been received. Apparently the claim of Harris Z. Waldman for permanent and total disability benefits under his policies was simply overlooked, misplaced or ignored by the Goverment. Until five years after this suit was commenced the Government maintained the position that Waldman had never filed a claim. In 1954 the Government finally admitted that "* * * an unsigned letter dated December 13, 1930, was received in the Veterans Administration in which letter a claim for insurance benefits was indicated, but that, if such letter did constitute a claim for insurance benefits, such claim was thereafter abandoned by Harris Z. Waldman: * * *." The Government later conceded at the hearing before the trial judge that Harris Z. Waldman's letter of December 13, 1930, constituted a sufficient claim for benefits under the converted insurance.

Title 38, U.S.C.A. § 445 provides in part:

"* * * no suit on United States Government life (converted) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made: *Provided,* That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded: *Provided further,* That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs. * * *"

The trial court found, in part, as follows: "The insured, by his course of conduct and by his acts and declarations, after filing of the letter of December 13, 1930 and the Application of February 17, 1931, abandoned and waived these claims for disability benefits under his three policies of insurance. I find that at least by March 17, 1939, if not before, this abandonment and waiver had taken place."

We regard the question of whether the insured withdrew the assertion of his rights under these policies as a mixed question of fact and law which this court may review independently of the findings of the court below. United States v. Mammoth Oil Co., 8 Cir., 1926, 14 F.2d 705.

It seems to us that there are three possibilities worth considering with respect to the intent of the insured when he made his statement that he was not "permanently and totally disabled" for purposes of seeking reinstatement of his lapsed insurance policies. First of all, it is conceivable that he intended thereby to withdraw his original claim for disability benefits under the policies. Secondly, he may have believed, either

rightly or wrongly, that the Veterans Administration would not process inconsistent claims. Balancing his desire to recover on his original claim, on the one hand, against his desire to obtain reinstatement of the lapsed policies, on the other, he may have concluded that when and if he were forced to make an election he would withdraw his earlier claim and pursue his application for reinstatement. Thirdly, he may have believed that the Veterans Administration would process inconsistent claims and may have intended to pursue them both—superficially inconsistent though they might be—leaving the question as to which claim would ultimately prevail to be resolved by the official decision of the Veterans Administration as to the condition of his health.

We are inclined to believe that the second of these three possibilities most probably represents the actual attitude of the insured toward his original claim. In other words, we believe he intended to pursue his original claim in addition to his applications for reinstatement of the lapsed policies if permitted to do so, but that he believed he would not be permitted to do so, in which event he would then elect to seek reinstatement, withdrawing his original claim for disability benefits under the policy.

If this is a fair representation of the insured's attitude, then clearly there was no intent to withdraw or waive the original claim except in a prospective and contingent way—that is, only in the event that he was forced to do so. But the Veterans Administration, as before, remained silent, and accordingly no election ever took place and the claim was not withdrawn.

Moreover it is certainly conceivable that the insured may have believed that the Veterans Administration would permit inconsistent claims to be processed simultaneously, leaving the ultimate decision to be resolved by the official findings of the Veterans Administration as to the condition of his health.

This attitude is basically not so inconsistent as it appears on the surface. It is entirely possible, even probable, that the insured did not actually know whether or not he was "permanently and totally disabled" within the technical meaning of that phrase. What he undoubtedly wanted was an official determination of the extent of his disability. He may have believed that his health, in any event, was no worse than it had been at the time of his original claim. He may have realized that any statement that he was not "permanently and totally disabled" might or might not prove to be true. But his original claim was pending and when and if he were given his physical examination, the question would then be resolved one way or the other. If he were found to be not "permanently and totally disabled" then his statement on his application for reinstatement of the policies would be correct. On the other hand, if he were "permanently and totally disabled" the incorrect statement on the applications for reinstatement would be of no consequence since a recovery on the original claim would preclude the possibility that the policies could have lapsed thereafter.

Even though the insured had no intent to withdraw his original claim it is entirely possible, under certain circumstances, that the claim might be regarded as withdrawn by operation of law. Conceivably the Veterans Administration would have been justified in regarding the insured's statement that he was not "permanently and totally disabled" as a withdrawal of his earlier claim which he might now be estopped to deny. The difficulty with this theory is that there is absolutely no evidence to show that the Government did in fact regard the statement as a withdrawal of the claim—indeed every fair inference is to the contrary. We do not believe the Government should be permitted to take the position that although it was not aware of the existence of the original claim for purposes of favoring the veteran with the acknowledgment and proc-

essing of the claim to which he was entitled, yet it was nonetheless constructively aware of the claim for purposes of creating a logical inconsistency which might be used to destroy the inconvenient claim which the Government now discovers for the first time. We do not approve this graceless theory that the Government, having completely disregarded and treated as a nullity the two letters in which the veteran sought to assert his rights, may nonetheless give a highly selective and retrospective effect to certain other correspondence which presents a logical inconsistency lending itself conveniently toward a destruction of this long-neglected and now somewhat embarrassing claim.

Once the insured has made his claim, the statute places upon the Government the duty to process the claim and grant or deny it. If the Government does not deny the claim the statute of limitations remains suspended. Burgett v. United States, 7 Cir., 1935, 80 F.2d 151; Gambill v. United States, 10 Cir., 1939, 102 F.2d 667. In the instant case the claim was apparently forgotten and no denial of it was made by the Veterans Administration until 1949. Now the Government seeks to avoid the natural consequences of its own inaction by asserting, despite its long neglect, that the claim was fortuitously withdrawn by the insured—and this despite the fact that there is no evidence tending to prove that the Government regarded these statements when made as a withdrawal of the claim.

What the Government is saying in effect is this: "If we had known of the existence of the original claim we would have regarded his subsequent statements as a withdrawal of that claim and the insured would have been estopped to deny it." But since it is clear that the Government did not know of the claim and did not regard these subsequent statements as a withdrawal of that claim, the entire argument is without basis. We do not believe the Government should be permitted to indulge in such highly selective afterthinking, especially when it apparently did no thinking at all with respect to this claim in the first instance.

Even if we assume, contrary to our knowledge of human nature, that the insured entertained an actual affirmative desire to withdraw his original claim, we do not believe the defendant can prevail.

We agree with counsel for the Government that "here what we are concerned with is not a right under the policies but with the assertion of such a right. Obviously the assertion can be withdrawn or nullified at will, by manifesting an intention not to press the right, without affecting the right itself. The claims in this case are analogous to an offer to make a contract, which may be revoked at any time before it is acted upon by statements or actions indicating that such is the intent of the offeror."

It should be noted, however, in this connection, that there is no such thing in the law as a constructive withdrawal of an offer. "At the present day, however, it is almost universally settled that a revocation requires communication and that, therefore an acceptance prior to a communicated revocation will make a binding contract." Selections from Williston on Contracts, Revised Edition, Williston and Thompson, p. 63.

By analogy we think the same principle applies to the withdrawal of the assertion of a right of any kind. Let us suppose that the insured by letter had expressed himself clearly as follows: "I hereby withdraw my claim of December 13, 1930 and February 17, 1931," but the letter was lost in the mail so that the withdrawal was never communicated to the Veterans Administration. It seems to us clear that the claim would still be pending despite the clearest intent of the insured to withdraw it, and that he could subsequently change his mind and insist that it be processed.

In our view, mere uncommunicated intent to withdraw the claim would not be enough. That is the situation here. Although the statements on the in-

sured's applications for reinstatement of the policies were communicated, there was no communication of an intent to withdraw the original claim as such, for this required an awareness of the inconsistency involved. There has been no evidence introduced to prove that there was in fact any such awareness at the time the statements were made and every fair inference is to the contrary. Accordingly this claim was still pending.

Once a claim has been filed, as we have already noted, the statute very clearly fixes upon the Veterans Administration the affirmative duty to make a denial in those cases in which it has determined to refuse benefits. It is equally clear that the statute of limitations remains suspended if the Administration fails to perform its duty in this respect.

It should be noted that the statute does not by its terms purport to suspend the statute of limitations while the claim is pending, but rather until the claim is denied, and this difference is significant with respect to the instant case. It is not necessary for us to go to the extent of holding that a clear and unambiguous withdrawal which was communicated to the Veterans Administration would not serve to set the statute of limitations running in the absence of a denial by the Government—although a strict interpretation of the statute would produce that result. We may assume, for present purposes, that such a communicated withdrawal would be sufficient; but if this is true, the underlying rationale must be that the statute of limitations was set in motion not by the withdrawal, as such, to which the statute gives no effect in this connection, but rather as justifiably excusing the failure of the Government to make the denial which the statute requires. In other words, after having communicated to the Veterans Administration an intent to withdraw a claim, the insured might be estopped to assert that the Government had failed to make a denial.

In the instant case we have no such situation. Even if we assume that the insured effectively withdrew his claim and accordingly that the claim was no longer pending, the statutory requirement is not thereby satisfied. Moreover the Government was not aware of the withdrawal and placed no reliance thereon. It therefore follows that the Government's failure to make a denial was not justifiably excused, and the statute of limitations remained suspended.

The judgment of the district court is vacated and the case is remanded to that court for a trial on the merits.