Juanito **TIMONI**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21896.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 8, 1969.

Decided June 13, 1969.

Mr. Robert L. Pillote, Washington, D. C., with whom Mr. Henry F. Lerch, Washington, D. C., was on the brief, for appellant.

Mr. David V. Seaman, Attorney, Department of Justice, with whom Asst. Atty. Gen., Edward L. Weisl, Jr., at the time the brief was filed, and Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Alan S. Rosenthal, Attorney, Department of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This is an appeal from a judgment in an action wherein appellant, a national and resident of the Commonwealth of the Philippines, sought benefits under the National Service Life Insurance Act of 1940.[1]   Julio T. Timoni served in the Philippine Army during World War II [2] under circumstances affording him gratuitous, or automatic, life insurance coverage as provided by the Act,[3] and died while that insurance was in force.  Appellant, claiming as the serviceman's son [4]

---

1. 54 Stat. 1008 (1940), 38 U.S.C. § 801 *et seq.* (1952).  The Act, as such, was repealed in 1958, 72 Stat. 1148 (1958), but appellant's rights, if any, to the claimed benefits are statutorily preserved.  38 U.S.C. § 788 (1964).

2. The Philippine military forces constituted a part of the armed forces of the United States.  See military order of President Roosevelt, 3 Fed.Reg. 1307 (July 26, 1941).

3. 38 U.S.C. § 802(1d) (3) (1952).

4. In its pleadings in the District Court, the Government denied the relationship, and disputed appellant's allegations as to the date of his birth and as to the date on which a valid claim was first submitted to the Veterans' Administration. See notes 22 and 23, *infra*, and accompanying text.  The Government recognizes, however, that the accuracy of the

and principal beneficiary,[5] submitted to the Veterans' Administration [6] a request for payment which was ultimately denied [7] and thereafter filed suit in the District Court.[8] The Government moved for dismissal on the ground, *inter alia,* that it appeared from the face of the complaint that the action came too late.[9] The court, accepting this view, granted the motion and dismissed the action.[10] We reverse that ruling and remand the case to the District Court for further proceedings.[11]

## I

During World War II, gratuitous life insurance was provided statutorily, without need for application or charge for premiums, for certain servicemen who, because of the precipitance of the war or the demands of the service, lacked normal opportunities to contract with the Government for life insurance protec-

tion.[12] Claims for benefits were required to be submitted to the Veterans' Administration for administrative adjudication, and a denial of the claim was made a condition precedent to suit.[13] The period within which a claim could be filed with the Administration was fixed at seven years,[14] with the proviso "[t]hat persons shown by evidence satisfactory to the Administrator to have been mentally or legally incompetent at the time the right to apply for  *  *  *  death benefits expires, may make such application at any time within one year after the removal of such disability." [15]

Limitation of actions on claims related to National Service Life Insurance is likewise a matter of federal law.[16] The general statutory limitation·is "six years after the right accrued for which the claim is made," [17] and it is "deemed that

---

factual allegations of the complaint is assumed for purposes of the District Court's ruling on the motion to dismiss and for purposes of our review of that ruling. Collins v. Hardyman, 341 U.S. 651, 652, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Dollar v. Land, 81 U.S.App. D.C. 28, 30, 154 F.2d 307, 309 (1946), aff'd 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); United States v. Arkansas Mills, 216 F.2d 241, 243 (8th Cir. 1954).

5. See 38 U.S.C. § 802(d) (2) (1952). The complaint alleged that the insured was not survived by a widow.

6. See note 23, *infra,* and accompanying text.

7. See note 24, *infra,* and accompanying text.

8. See 38 U.S.C. § 784(a) (1964).

9. See note 10, *infra.*

10. The court's ruling was based solely on the ground that appellant's action was barred by the provisions of the Act limiting the time within which it might be brought. Consequently, we have no occasion on this appeal to consider the other grounds upon which the Government moved for dismissal.

11. Appellant had moved for summary judgment which was denied concomitantly with the court's ruling on the Government's motion to dismiss. That ruling

is assigned as error but, given the material facts in dispute, see note 4, *supra,* the court properly refused to award summary judgment. See Fed.R.Civ.P. 56 (c). Accordingly, we affirm that much of the District Court's action.

12. See note 46, *infra,* and accompanying text.

13. See note 52, *infra,* and accompanying text.

14. 38 U.S.C. § 802(d) (5) (1952). The earlier limitation had been five years. See 62 Stat. 59 (1948); S.Rep. No. 902, 80th Cong., 2d Sess. (1948); H.R. Rep. No. 1011, 80th Cong., 1st Sess. (1947).

15. 38 U.S.C. § 802(d) (5) (1952).

16. 38 U.S.C. § 784(b) (1964), quoted *infra* note 17.

17. "No suit on National Service Life Insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made. For the purposes of this section it shall be·deemed that the right accrued on the happening of the contingency on which the claim is founded. The limitation of six years is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim: *Provided,* That in any case in which a claim is timely filed the claimant shall

the right accrued on the happening of the contingency on which the claim is founded." [18]  However, the statute continues, "[t]he limitation of six years is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon [19] and the denial of such claim: *Provided,* That in any case in which a claim is timely filed the claimant shall have not less than ninety days from the date of mailing of notice of denial within which to file suit." [20]  And importantly to this litigation, the statute further specifies that "[i]nfants, insane persons, or persons under other legal disability, or persons rated as incompetent or insane by the Veterans' Administration shall have three years in which to bring suit after the removal of their disabilities." [21]

Julio T. Timoni, the insured, died on September 20, 1942. From appellant's allegation that he was born on April 25, 1942, [22] it follows that he attained majority on April 25, 1963. His claim for benefits, he says, was filed with the Veterans' Administration on March 30, 1964, [23] within a year after he reached the

age of 21, and was denied on March 21, 1966. [24]  The action in the District Court was filed on September 6, 1967, slightly more than three years and four months after appellant reached that age.

Appellant maintains that Congress intended that the three-year limitation should be tolled while a claim is under consideration by the Veterans' Administration. Thus, he urges, by eliminating from the computation the nearly two years during which his claim was pending before the Administration, the elapsed time since his 21st birthday was only about a year. The Government, on the other hand, contends that the statute permits but three periods for bringing suit: (1) six years from the date of the insured's death, (2) 90 days from the date of administrative denial of a claim, and (3) in the case of a minor, three years from the date he reaches majority. The Government argues further that the three-year period is not suspended during the pendency of the claim before the Veterans' Administration. These are the conflicting contentions we investigate on this appeal. [25]

---

have not less than ninety days from the date of mailing of notice of denial within which to file suit. * * * Infants, insane persons, or persons under legal disability, or persons rated as incompetent or insane by the Veterans' Administration shall have three years in which to bring suit after the removal of their disabilities. * * * No State or other statute of limitations shall be applicable to suits filed under this section." 38 U.S.C. § 784(b) (1964).

18. *Id.*

19. See the text *supra* at note 13.

20. See note 17, *supra.*

21. *Id.*

22. The Veterans' Administration found that appellant was born on December 26, 1941, rather than on April 25, 1942, as he alleged. *See* note 4, *supra.*

23. Appellant notified the Veterans' Administration of his desire to apply for insurance benefits by letter on March 30, 1964, and filed what the Administration

termed a "formal claim" on August 26, 1964. See note 10, *supra.*

24. The Veterans' Administration denied the claim on the ground that it was untimely. See the text *supra* at notes 14 and 15. The validity of that determination is not before us on this appeal. See note 4, *supra.*

25. The World War Veterans' Act of 1924, 43 Stat. 612 (1924), as amended, 46 Stat. 992 (1930), contained a limitation in language almost identical to that found in the present law, except that it did not grant a 90-day extension for filing suit after the administrative proceeding became final. For a construction of this legislation, see United States v. Towery, 306 U.S. 324, 329–332, 59 S.Ct. 522, 83 L.Ed. 678 (1939). In the National Service Life Insurance Act of 1940, the limitation provisions that governed suits under the World War Veterans' Act of 1924 were originally incorporated, see 38 U.S.C. § 817 (1952), and the Act did not assume its present form until 1958. See 72 Stat. 1165 (1958), 38 U.S.C.

## II

█ It is evident that appellant's action in the District Court came well outside the general six-year limitation. That period commenced when "the right accrued for which the claim is made,"[26] and by statute "the right accrued on the happening of the contingency on which the claim is founded."[27] These specifications have been uniformly construed to mean that the right to sue for gratuitous National Service Life Insurance arises upon the death of the insured serviceman.[28] Even with the addition of the time during which administrative consideration of appellant's claim extended, his suit can derive nothing from the six-year provision.

█ Nor are we able to accept the Government's suggestion that an action instituted by appellant within 90 days after administrative rejection of his claim would have met the language of the statute.[29] The 90-day stipulation made its appearance in federal legislation in 1936 [30] as a proviso to the suspension of "[t]he limitation of six years"[31] for the duration of the administrative proceeding, and that character it has retained until today.[32] The courts have recognized that its purpose is to protect claimants who present their claims to the Veterans' Administration at a point so near the close of six years as to leave the period remaining after administrative denial so short as to jeopardize a timely filing in court.[33] The congressional solution for such situations was a minimum 90-day period for suit after administrative denial, and both in language and aim the 90-day period is associated only with the general six-year limitation. So far as the terms of the Act are concerned, that period has nothing to do with the three-year saving provision.[34]

The Government's position on the latter provision is bottomed on the literal language of the statute. The term of administrative pendency is expressly excluded from the general six-year period [35] but, the Government points out, the three-year saving provision contains no comparable exclusion.[36] Therefore, the argument goes, the three-year period begins to run upon the minor claimant's attainment of majority and continues unabatedly until expiration. This is so, says the Government, because no other result is explicated by the statute, and the statute, it adds, should be strictly construed.

§ 784(b) (1964). With substantial similarity in all legislation on the subject since 1924, we draw upon the decisions under the earlier statutes where they have precedental value in the construction of the present law.

26. 38 U.S.C. § 784(b) (1964), quoted *supra* note 17.

27. *Id.*

28. United States v. Towery, *supra* note 25, 306 U.S. at 331, 59 S.Ct. 522; Cole v. United States, 72 App.D.C. 118, 119, 112 F.2d 203, 204, cert. denied 311 U.S. 647, 61 S.Ct. 31, 85 L.Ed. 413 (1940). See also Peak v. United States, 353 U.S. 43, 45, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957).

29. We are not presented with, nor do we reach, the question whether, as a matter of construction to avoid a constitutional question emanating from a distinction between adult and minor claimants, the three-year saving provision favoring minors must be read as though it contained the 90-day extension that favors adults.

30. 49 Stat. 2034 (1936).

31. *See* note 17, *supra.*

32. *See* note 17, *supra.*

33. The purpose of the 90-day stipulation was "to provide, as other judges have pointed out, for those cases where the period of suspension of the statute expired so soon after the denial of the claim that the claimant could not readily protect his rights." Atkinson v. United States, 39 F.Supp. 198, 200 (D.Mass. 1941). See also Robinson v. United States, 84 F.2d 885, 887 (5th Cir. 1936); Danner v. United States, 100 F.2d 43, 45–46 (8th Cir. 1938).

34. See United States v. Pastell, 91 F.2d 575, 579 (4th Cir. 1937); Jensen v. United States, 19 F.Supp. 494, 495 (D. Idaho 1937).

35. See note 17, *supra.*

36. See note 17, *supra.*

We are persuaded, however, that our approach to the problem at hand must differ from the technique utilized by the Government. "The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable * * * after the prescribed time' "[37]—"the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances."[38] And "[i]n order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of rights given by the Act."[39] We have searched diligently into the legislative history of the time limitations specified in the Act, and we find it inconclusive on the issue before us. Our task in this case, then, is to penetrate beneath the face of the statute to ascertain whether a tolling of the three-year period during the administrative proceeding, "effectuates the basic congressional purposes in enacting this humane and remedial Act, as well as those policies embodied in the Act's limitation provision * * *."[40]

## III

In embarking upon this quest, we must, of course, consider and attach due significance to the language Congress chose to use, for the most facile vehicle of expression remains the written word. But statutory words may or may not serve that function well; words alone cannot always be depended upon to convey objectives accurately. The Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, * * * for 'literalness may. strangle meaning.' "[41] This is particularly so where, as here, it is an implication from what is written, rather than an explicit command, that supposedly furnishes the guide for judicial action. As we conceive our mission, it is to probe deeply in an effort to determine whether the words really mean what at best they only weakly appear to say.

Nor can we accept the Government's suggestion that an acceptable assessment of legislative purpose can be made by the simple expedient of measuring the statute by a canon of strict construction. Congress may, of course, specify the conditions upon which sovereign immunity is waived, and within constitutional bounds may grant or withhold the right of suit against the Government on terms according its view of the public weal.[42] We realize, too, that every class

37. Burnett v. New York Cent. R. R., 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965), quoting Midstate Horticultural Co. v. Pennsylvania R. R., 320 U.S. 356, 360, 64 S.Ct. 128, 88 L.Ed. 96 (1943).

38. Burnett v. New York Cent. R. R., *supra* note 37, 380 U.S. at 427, 85 S.Ct. at 1054.

39. *Id.*

40. *Id.* at 427–428, 85 S.Ct. at 1054.

41. Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962), quoting Utah Junk Co. v. Porter, 328 U.S. 39, 44, 66 S.Ct. 889, 90 L.Ed. 1071 (1946) (other citations omitted). As we recently stated, "our concern is not simply with Congress' language, but with its logic as well. For statutes, as

the Supreme Court has said, are 'instruments of government,' not 'exercises in literary composition,' * * * and '[d]eparture from a literal reading of statutory language may * * * be * * * necessary in order to effect the legislative purpose.' * * * We must look through the statute itself to what lay behind it." Salt River Project Agricultural Imp. & Power Dist. v. FPC, 129 U.S.App.D.C. 117, 391 F.2d 470, 474 (1968), quoting United States v. Shirey, 359 U.S. 255, 260, 79 S.Ct. 746, 3 L.Ed.2d 789 (1959), and Malat v. Riddell, 383 U.S. 569, 571–572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966) (other citations omitted).

42. Crown Coat Front Co. v. United States, 386 U.S. 503, 520, 87 S.Ct. 1177, 18 L. Ed.2d 256 (1967); Honda v. Clark, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d

of litigation permitted against the Government derogates just to that extent from its general immunity, a circumstance having some tendency to indicate that perhaps an exception to the law as written was not desired.[43] Yet express congressional consent to suit is not a *sine qua non* of the tolling of a statute of limitations affecting suits against the Government,[44] and here, as in other situations, the question is ultimately one of legislative intent.[45] Our endeavor in this case is to ascertain what the intent as to the statute under consideration actually was.

■ We start with recognition of the well understood purpose the gratuitous insurance provision was designed to achieve. A modest amount of life insurance was to be afforded, governmentally and automatically, to those so circumstanced in the service of their country that it was unlikely that they could provide for themselves.[46] "The provision for gratuitous insurance," we have said, "was generous legislation, plainly adopted for humane and patriotic reasons." [47]

In common with other courts,[48] we have interpreted that provision with a view to preserving the values Congress deemed basic to the legislation.[49] It would be entirely out of character for a court charged with responsibility of actualizing legislative mandates to forget or forsake the wholesome objectives the legislature had in mind.

■ The protection of underaged beneficiaries of National Service Life Insurance, many in far distant lands, was obviously a special concern of the lawmakers. Saving provisions, as to both administrative and judicial remedies, were prescribed by the Act,[50] in both instances affording protection by enlarging the time within which the remedy might be invoked for a term beyond the beneficiary's minority. While it has been held that after administrative rejection of a minor's claim his guardian may, notwithstanding the three-year saving provision, bring an action during the ward's minority,[51] it is a notorious fact of human experience, reflected in federal and state legislation abounding the Na-

244 (1967). See also United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ; Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) ; Kendall v. United States, 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1882).

43. See Honda v. Clark, *supra* note 42, 386 U.S. at 501, 87 S.Ct. 1188. See also the cases cited, *supra* note 42.

44. Crown Coat Front Co. v. United States, *supra* note 42, 386 U.S. at 519–522, 87 S.Ct. 1177 ; Honda v. Clark, *supra* note 42, 386 U.S. at 500–502, 87 S.Ct. 1188.

45. See the cases cited *supra* notes 37 and 44.

46. As the statute recites, "many of the personnel of our armed forces (1) were unable to comply with the prerequisites necessary to the granting of insurance by reason of extended duty in the North Atlantic, Hawaii, the Philippines, and other outlying bases ; (2) had failed or neglected to apply for such insurance in the expectation that their service would be peacetime service only ; and (3) by reason of the suddenness with which war was thrust upon us, had not sufficient

time to apply for such insurance prior to engaging in combat." 38 U.S.C. § 802(d)(4) (1952). See also United States v. Zazove, 334 U.S. 602, 610, 68 S.Ct. 1284, 92 L.Ed. 1601 (1942).

47. United States v. Philippine Nat'l Bank, 110 U.S.App.D.C. 250, 251–252, 292 F.2d 743, 744–745 (1961). See also Philippine Nat'l Bank v. United States, 112 U.S.App.D.C. 126, 128, 300 F.2d 718, 720 (1962).

48. United States v. Zazove, *supra* note 46, 334 U.S. at 610, 68 S.Ct. 1284 ; United States v. Vandver, 232 F.2d 398, 402 (6th Cir. 1956) ; Thomas v. United States, 189 F.2d 494, 497 (6th Cir.), cert. denied 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641 (1951). See also American Nat'l Bank & Trust Co. of Chicago v. United States, 124 F.2d 743, 745 (7th Cir. 1941), cert. denied 316 U.S. 674, 62 S.Ct. 1042, 86 L.Ed. 1748 (1942).

49. See the cases cited *supra* note 47.

50. See the text *supra* at notes 15 and 21.

51. Johnson v. United States, 87 F.2d 940, 942–943, 109 A.L.R. 949 (8th Cir. 1937). See also Wolf v. United States, 10 F. Supp. 899, 900 (S.D.N.Y.1935).

tion, that far too many minors have nobody upon whom they can depend to look out for their interests. We think the saving provisions of the Act favoring minors represent a congressional judgment that minors are not to be counted on to do much litigating, administratively or judicially, during minority. We take them, too, as a judgment that the full periods of time respectively specified are vital to the protection Congress intended to afford.

## IV

Perhaps the most striking consequence of adopting the Government's position is the resulting need to cram the administrative proceeding within the three-year interval between the minor's arrival at majority and the point at which his lawsuit becomes barred. That the administrative remedy must be invoked and the administrative proceeding must run its course are indispensable prerequisites to suit.[52] At the same time, as the decisions reveal, the duration of a claim proceeding before the Veterans' Administration may be long indeed [53]—ofttimes longer than the three-year period.[54] Thus, the construction for which the Government contends is accompanied by the specter that the three years will prove to be too short.

Courts have often recognized legislatively unarticulated exceptions to limitation periods arising from the necessities of the situation. A rather common form of necessity for the implication of an exception is where a party is effectively prevented from exercising his right to sue. Injunction or other legal bar against the exercise,[55] fraudulent concealment of facts generating the cause of action,[56] and the disruptions of war [57] are but some of the more familiar examples. The courts have also recognized that a requirement of administrative proceedings prior to accrual of a right to sue may generate either a delay in the commencement or a tolling of the limitation period for such time as the administrative proceeding consumes.[58] A conspicuous example is Crown Coat Front Company v. United States,[59] wherein the Supreme Court held that the right of action on a contractor's claim subject to prior administrative proceedings pursuant to the disputes clause in a Government contract did not accrue until the administrative action was final. A consideration prominent in the Court's decision was the circumstance that the administrative proceedings might endure beyond the applicable limitation period:

To hold that the six-year time period runs from the completion of the contract, as the Government insists, would have unfortunate impact. The con-

52. 38 U.S.C. § 784(a) (1964). See also Scott v. United States, 189 F.2d 863, 864 (5th Cir.), cert. denied 342 U.S. 878, 72 S.Ct. 169, 96 L.Ed. 660 (1951); United States v. Brundage, 136 F.2d 206, 209 (6th Cir. 1943); United States v. Christensen, 207 F.2d 757, 758 (10th Cir. 1953).

53. See the cases cited *infra* note 54.

54. E. g., Rosario v. United States, 70 App. D.C. 323, 328, 106 F.2d 844, 849 (1939) (8 years); Waldman v. United States, 229 F.2d 99, 100 (1st Cir. 1956) (19 years); Atkinson v. United States, *supra* note 33, 39 F.Supp. at 199 (8 years).

55. Elliott & Horne Co. v. Chambers Land Co., 61 Cal.App. 310, 215 P. 99, 100 (1923); Steele v. Bliss, 166 Mich. 593, 132 N.W. 345–346, 37 L.R.A.,N.S., 859 (1911); Macke v. Jungels, 102 Neb. 123, 166 N.W. 191, 192 (1918).

56. Emmett v. Eastern Dispensary & Cas. Hosp., 130 U.S.App.D.C. 50, 396 F.2d 931, 936 (1967), and cases cited.

57. Amy v. City of Watertown, 130 U.S. 320, 325–326, 9 S.Ct. 537, 32 L.Ed. 953 (1889); Ross v. Jones, 89 U.S. (22 Wall.) 576, 586, 22 L.Ed. 730 (1874); Hanger v. Abbott, 73 U.S. (6 Wall.) 532, 540, 18 L.Ed. 939 (1867). But see Soriano v. United States, *supra* note 42, 352 U.S. at 275–276, 77 S.Ct. 269.

58. Crown Coat Front Co. v. United States, *supra* note 42, 386 U.S. at 514–522, 87 S.Ct. 1177; Honda v. Clark, *supra* note 42, 386 U.S. at 494–502, 87 S.Ct. 1188; Steel Improvement & Forge Co. v. United States, 355 F.2d 627, 631, 174 Ct.Cl. 24 (1966); Lipp v. United States, 301 F.2d 674, 157 Ct.Cl. 197 (1962).

59. *Supra* note 42.

tractor is compelled to resort to administrative proceedings which may be protracted and which may last not only beyond the completion of the contract but continue for more than six years thereafter. If the time bar starts running from the completion date, the contractor could thus be barred from the courts by the time his administrative appeal is finally decided. This would be true whether he wins or loses before the board of appeals. Even if he prevailed there and was granted the equitable adjustment he sought, the Government would be immune from suit to enforce the award if more than six years had passed since the completion of the contract. This is not an appealing result, nor in our view, one that Congress intended.[60]

We find it hard to believe that a legislative body that over the years has manifested a solicitous concern for judicial as well as administrative scrutiny of insurance claims would invite jeopardy by stinting on time provisions for either. We encounter equal difficulty with any assumption that Congress intended to impose on those who are newly emancipated from legal disabilities more onerous and stringent time requirements for litigating than upon those who at all relevant times were completely free from legally disabling handicaps. Rather, we accept the three-year saving provision for minors as an expression of congressional will that the three-year period is not to be whittled down. And since Congress made it plain that administrative proceedings must precede judicial proceedings, we think it highly likely that Congress intended that the exigencies of neither would encroach upon those of the other.

██ We are advertent to the consideration that statutes of limitation are statutes of repose calculated to comfort potential defendants—in this case the Government. "This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights."[61] We think, on balance of the competing factors, that the policy is outweighed by stronger indications of congressional intent to afford appellant the opportunity for three full years, exclusive of the period of its administrative consideration, to test his claim in court, and that any other reading of the Act would be inconsistent with its purposes. We hold that the three-year period was tolled when appellant filed his claim with the Veterans' Administration on March 30, 1964, and did not resume until it was denied on March 21, 1966. By this measure, appellant's suit in the District Court was timely, and he is entitled to have it heard.

The judgment appealed from is accordingly reversed and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.[62]

Reversed.

Circuit Judge BURGER did not participate in the foregoing opinion.

---

**60.** 386 U.S. at 514, 87 S.Ct. at 1183. The Court distinguished Soriano v. United States, *supra* note 42, and Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), as cases arising out of situations wherein suits could have been brought without need to resort to administrative remedies, and McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), on the ground that while it construed a statute requiring an administrative proceeding before judicial action could be instituted, "the applicable regulations provided that if a claim was not rejected within 60 days after filing, it would be deemed to have been administratively disallowed and the claimant free to enforce his claim. There was no chance for administrative action to consume the entire limitations period and therefore bar all resort to the courts." 386 U.S. at 517, 87 S.Ct. at 1185.

**61.** Burnett v. New York Cent. R. R., *supra* note 37, 380 U.S. at 428, 85 S.Ct. at 1055.

**62.** See note 11, *supra*.