CONSUMER PRODUCT SAFETY COMMISSION IMPROVEMENTS ACT, VEHICLE ANDTRAFFIC LAW, § 1236(d), FEDERAL BICYCLE REGULATIONS (40 FR 52815)AND NEW YORK STATE BICYCLE REGULATIONS (15 NYCRR PART 59).
The existing New York State Bicycle regulation (15 NYCRR PART 59) was not preempted by the existing Federal Bicycle Regulations (40 FR 52185) by the enactment of the Consumer Product Safety Commission Improvements Act on May 11, 1976, although the New York and Federal regulations differed but covered the same risk of injury. Any future Federal regulation covering the same risk of injury and differing from a State regulation would preempt the State regulation.
HON. JAMES P. MELTON Commissioner of Motor Vehicles
This is in reply to your letter of May 20, 1976, in which you request an opinion as to whether the New York State Bicycle Regulations, with respect to reflectorized tires and other reflectors on bicycles, promulgated by the State Department of Motor Vehicles were preempted by Federal bicycle regulations promulgated November 12, 1975 by reason of the enactment of the Consumer Product Safety Commission Improvements Act which was signed by President Ford on May 11, 1976 (hereinafter called the "Federal Act").
In your letter you state that the Commissioner of Motor Vehicles promulgated the State regulations filed October 17, 1974 effective November 7, 1974 (15 NYCRR Part 59), pursuant to the provisions of Vehicle and Traffic Law, § 1236(d) and that under the authority of the Federal Hazardous Substances Act, the United States Consumer Products Safety Commission promulgated the Federal bicycle regulations (40 FR 52815) prior to the enactment of the "Federal Act". These regulations were published in the Federal Register on November 13, 1975, and cover the same risk of injury as the State regulations but differ in requirements.
The "Federal Act" which became law on May 11, 1976, provides that:
 "(B) Except as provided in paragraphs (2), (3), and (4), if under regulations of the Commission promulgated under or for the enforcement of section 2(q) a requirement is established to protect against a risk of illness or injury associated with a hazardous substance, no State or political subdivision of a State may establish or continue in effect a requirement applicable to such substance and designed to protect against the same risk of illness or injury unless such requirement is identical to the requirement established under such regulations." (Emphasis supplied.)
The mere fact that a "Federal Act" deals with interstate commerce does not in and of itself preclude the right of a state to exercise its police powers unless there is clear evidence of an intent to preempt. See Huron Portland Cement Co. v. City ofDetroit, 362 U.S. 440 (1959). "Congress * * * should manifest its intention clearly" (Schwartz v. Texas, 344 U.S. 199, 202
[1952]). Where police power is concerned, as here, preemption will not be presumed. (Engineer v. Chicago R.I. R.R. Co.,382 U.S. 423 [1966].) The rule is that the intention to supersede the State's police powers must be clearly evidenced by the Federal legislation. Congressional intent would be a factor in making such a determination. See Chrysler Corp. v. Toffany,
419 F.2d 299 (2d Cir., 1969). In the instant case, the intent to supersede only exists as to future Federal regulations promulgated under the "Federal Act".
This is borne out by the contrasting provisions of the Act originally introduced by the Senate Commerce Committee and the present "Federal Act." The Senate Commerce Committee Act provided in part as follows:
 "(c)(1) Except as provided in paragraphs (2) and (3), if a regulation of the Consumer Product Safety Commission, that is used to determine when a hazardous substance or article shall be a banned hazardous substance or article, is in effect and if such regulation has been established to deal with a risk of illness or injury associated with a hazardous substance or article, no State and no political subdivision of a State may establish or continue in effect a requirement applicable to such substance or article and designed to deal with the same risk of illness or injury, unless such requirement is identical to the requirement established under such regulation." (Emphasis added.)
The enactment of the Commerce Committee Bill would have preempted a State regulation by a Federal regulation already in effect. This is demonstrated by the language "if a regulation of the Consumer Product Safety Commission * * * is in effect * * * no State * * * may establish or continue in effect * * *". The fact that the final version of the "Federal Act" dropped this language implies Congress intended that only a future Federal regulation would result in preemption of a State regulation.
The "Federal Act" not only provides for preemption in cases of hazardous substances, but also in cases of labeling of such substances. Preemption provisions with respect to each differ. Whereas the preemption provision as to hazardous substances (applicable to bicycles) applies only to future Federal regulations, the language with respect to labeling applies to present regulations. The labeling provisions of the "Federal Act" states that preemption occurs if a regulation "is in effect." This, of course, would apply to an existing Federal regulation. The difference in language between the two regulations clearly indicates a difference in intended result.
It should be further noted that the "Federal Act" provides that data to be used as argument respecting the adoption of a regulation may be submitted prior to the adoption of the regulation. The State had no reason to oppose or offer data concerning the preexisting Federal regulations since those regulations did not preempt the State's regulations; see Mtr. ofSchwinn Bicycle Company et al. v. Melton et al., 86 Misc.2d 525, (Sup.Ct., Albany Co., 1976). If a regulation is proposed under the new law, the State knowing that it would preempt its regulations would have an opportunity and might want to submit data in favor or against its adoption.
It should be further pointed out that the "Federal Act" provides that the State may apply for an exemption from a Federal rule or regulation provided that its own regulation would not result in a "hazardous substance" being in violation of the Federal rule or regulation, created a higher degree of protection than the Federal rule or regulation, and did not unduly interfere with interstate commerce. It would seem unlikely that Congress which took such care in affording a State an opportunity to justify its regulations as to any future Federal promulgations, would intend that past State regulations would be automatically preempted by what were non-preemptive preexisting Federal promulgations by the mere enactment of the new law without the State having had an opportunity to argue for a Federal promulgation of the identical regulation that the State had already adopted. Nor can it be argued that the "Federal Act" was specifically enacted to do away with the existing different State and Federal bicycle regulations since the "Federal Act" is general in its scope covering a wide area of potential hazards.
For these reasons it is my opinion that the State's regulations with respect to reflectorized tires and other reflectors on bicycles is not preempted by a Federal regulation which preexisted the enactment of the "Federal Act" but could be preempted by a new regulation made by the Commission after the enactment of the "Federal Act".
I should note, however, that the definitive decision as to whether there has been preemption can only be by the Courts.