**Axel-Felix KLEIBOEMER, Richard A. Bishop, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 79–123, 79–547 and 81–1232.

District of Columbia Court of Appeals.

Argued Nov. 3, 1982.
Decided March 22, 1983.

---

Bradley G. McDonald, Washington, D.C., with whom Philip L. Kellogg, James L. Lyons, John M. Bixler, Ronald D. Aucutt, and John F. Karl, Jr., Washington, D.C., were on the briefs, for appellants.

Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and James E. Lemert, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before KERN, PRYOR and BELSON, Associate Judges.

KERN, Associate Judge:

This appeal is the residuum of the convoluted litigation which ultimately resulted in a decision by this court en banc (one judge dissenting) that the City Council had impermissibly imposed a tax on non-resident unincorporated professionals and personal service businesses. *Bishop v. District of Columbia,* 411 A.2d 997 (D.C.App. en banc), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980).

Questions of statutory interpretation are presented in this appeal: the meaning and applicability to the instant case of D.C.Code § 47–1586j(a) (1973), requiring a taxpayer to file an administrative claim of overpayment of tax within a fixed period of time, and D.C.Code § 47–2413(c) (1973), providing for the payment of interest on overpayments of taxes.

I

The events pertinent to this appeal occurred as follows. In March 1976, appellant Kleiboemer paid the now invalidated tax and promptly filed an individual administrative claim for refund, which the District denied. Thereupon, he filed a class action petition for refund in the Tax Division of the Superior Court seeking a refund of "all amounts paid by all taxpayers who are members of the petitioner's class." (Record at 16.) In October 1977, the trial court granted appellant's motion for class action determination, pursuant to Super.Ct.Civ.R. 23(b)(1)(A)[1] and ordered that

> the class shall consist of all nonresidents who are subject to the tax in question ... and who have paid the tax.

(Record at 47.) The trial court during October 1977 entered two further orders holding the tax unlawful but declaring that appellant Kleiboemer and members of the class who were fiscal year taxpayers were entitled to a refund for all taxes paid prior to December 1, 1975, "provided they have complied with or comply with ... § 47–1586j." (Record at 82.)

It is agreed by the parties that if § 47–1586j is applicable to all nonresident taxpayers who paid the tax in 1975, their claims for refund must have been filed by April 15, 1979. In December 1978, appellant Kleiboemer filed with the District, on behalf of the class, a claim for refund, which the District denied. Soon thereafter, the trial court ruled that the class claim for refund filed by appellant Kleiboemer did not comply with the provisions of § 47–1586j, but concluded that "individual notice to the members of the class of the statutory requirement to file a claim for refund is appropriate." (Record at 110.) Notice of the filing requirement was then included in

1. The rule provides in pertinent part:
   An action may be maintained as a class action if ... the prosecution of separate actions by ... individual members of the class would create a risk of ... inconsistent or

varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class....

the District's mailing of 1978 tax return forms. However, some erstwhile members of the class did not actually receive the mailing, because they no longer operated unincorporated businesses in the District and hence were no longer obligated to file a return. Accordingly, the court in March 1979 directed the District to issue a press release to publicize the need by those who had paid the tax for 1975 to file a refund claim by April 15, 1979. On April 5, 1979, the court held that sufficient notice had been given to the class members regarding the administrative claim requirement. (Record at 138.) On April 15, the filing deadline for the 1975 tax year expired.

After the tax was held invalid, first by a division of this court, then by the full court en banc, the parties entered into a consent judgment, pursuant to which the class members were again notified, by a mailing, of the requirement that they file an administrative claim. At the time of that second mailing, however, the filing deadline for taxable years 1975 and 1976 had already expired.

On September 24, 1981, the trial court ruled as follows on the issues which had been left unresolved by the earlier consent judgment: (1) that "the timely filing of individual claims [for refund] at the administrative level by affected taxpayers is a prerequisite to refunds in this suit"; and (2) that interest should be computed "from the date such individual claims are timely filed until the date of the making of the refund." (Record at 176.) It is from these September 24 rulings that the present appeal is taken.

## II

As to the requirement of an individual claim for refund, § 47–1586j(a) provides in pertinent part as follows:

> No ... refund shall be allowed after three years from the time the tax was paid unless before the expiration of such period a claim therefor is filed by the taxpayer ....

It is agreed that a number of nonresidents who paid the tax for the years 1975 and/or 1976 did *not* file a claim for refund of such tax payments within three years. Appellants, however, urge that the whole purpose of a class action pursuant to Rule 23(b)(1)(A)—to eliminate the possibility of inconsistent adjudications if each member of the class were to sue individually—is frustrated by requiring that *each* taxpayer who is a member of the class must have filed an administrative refund claim in order to obtain a refund after the tax has been judicially determined to be unlawful. However, in *District of Columbia v. Keyes,* 362 A.2d 729 (D.C.1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977), we held that a class action [2] for refund of taxes paid was incorrectly entertained by the trial court because the taxpayers seeking refund had *not* first filed an administrative claim for refund.

Appellants contend (Brief at 18) that the trial court's ruling "would undercut the policy of Rule 23 ... to allow class representatives to vindicate the rights of those who lack the knowledge or resources to pursue a remedy individually and to obtain justice in the courts." However, as we pointed out in

---

**2.** It is not significant that *Keyes* did not involve a certified class action. The rules of the Tax Division at that time did not include class certification procedures; however, the court in *Keyes* recognized that new class action rules had been adopted and specifically stated that "this decision may be considered to have precedential effect in future class action tax refund cases." *Id.* 362 A.2d at 732 n. 5, 736. Further, as pointed out in the District's brief, at the time Congress directed the Superior Court to adopt class action rules for tax cases, the federal courts consistently held that the filing of an administrative claim was a prerequisite to recover refunds. *See, e.g., Heisler v. United States,* 463 F.2d 375 (9th Cir.1972) (per curiam), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973) (class action); *McConnell v. United States,* 295 F.Supp. 605 (E.D. Tenn.1969) (class action). There is no reason to believe that Congress intended a different rule for the District of Columbia. *See* District of Columbia Real Property Tax Revision Act of 1974, Pub.L. No. 93–407, § 428, 88 Stat. 1036, 1057 (1974).

*Keyes,* the Congress enacted specific legislation in § 47–1586j requiring an individual to file a refund claim and we may not ignore such a legislative mandate.[3] This is particularly true since, as we explained in *Keyes, supra,* 362 A.2d at 732, the remedy is purely statutory: "[r]ecovery of taxes illegally or erroneously assessed and voluntarily paid ... is a matter within the purview of the legislative branch." We further noted, "Tax statutes are necessarily formalistic and often technical. It is essential that we adhere to their technicalities, even if at times a seeming hardship results to the taxpayer." *Id.* at 737. This is so particularly because the statutory prerequisite of a claim for refund is jurisdictional, as we also noted in *Keyes. Id.* at 733.[4]

Appellants also maintain that in this case *Keyes* does not require the filing of individual claims for refund by members of the class because the filing requirement—essentially an application of the doctrine of exhaustion of remedies—need not be met when resort to the administrative process would be futile. However, we specifically rejected that argument in *Keyes.* There we acknowledged tht, in *District of Columbia v. Green,* 310 A.2d 848, 856 (D.C.1973),

we had permitted taxpayers who had bypassed the administrative process to proceed with an action in court *in part* because those taxpayers had " 'no meaningful ability to challenge [the] assessment at all' " at the administrative level. *Id.* 362 A.2d at 734 n. 11. However, in *Keyes* we emphasized that the futility of the administrative appeal was only one of the several "extraordinary circumstances" on which we had based the *Green* decision; that "only injunctive relief was sought"; and that "it would be a rare instance when taxpayers would not bypass [the administrative procedure] at great peril." *Id.*[5]

Instead, we explained in *Keyes* that the extraordinary equitable considerations were not present which had led us in *Green* to permit a limited exception to an essential requirement of the purely statutory refund procedure. Nor are they present in the instant case. It was not until October 17, 1977, that the tax in question in this case was initially held unlawful—a year and one half after it first came due for the 1975 tax year. An appeal was taken promptly from that ruling. Thus it is not unreasonable to conclude that aggrieved taxpayers had ample opportunity prior to the ruling of Octo-

---

**3.** We note that the trial court did require the District to notify taxpayers by public announcement of the need to file their refund claims within a certain time period, and that the trial court later held that the taxpayers had had reasonable and sufficient notice. Under these circumstances, the members of the class must be deemed to have the knowledge to take the steps required by statute.

**4.** Accordingly, we cannot agree either with appellants' argument that, even if an administrative claim must be filed, the claim for refund filed by appellant Kleiboemer on behalf of the entire class satisfies the requirements of § 47–1586j. The statute plainly states that the claim must be filed "by the taxpayer." Moreover, the trial court specifically ruled on January 3, 1979, that Kleiboemer's claim for refund on behalf of the class did not comply with § 47–1586j or with the order of October 27, 1977 requiring compliance with § 47–1586j. Appellants did not appeal from the January 3 order. *Dellums v. Powell,* 184 U.S.App.D.C. 324, 566 F.2d 216 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), cited in appellants' reply brief, is distinguishable: it in-

volved a broad statute expressly permitting notice of a claim against the District to be given by the claimant's agent. *Id.* at 336–37, 566 F.2d at 228–29. Moreover, the court in *Dellums* found that notice by agent would not conflict with the purposes of that claim requirement; whereas, in this case, the purposes of the limitation period discussed *infra,* at 735, would not· be served by a departure from the express terms of the statute or by a holding that "substantial compliance" satisfies the statute.

**5.** Appellants also cite to *Thorn v. Jefferson County,* Ala., 375 So.2d 780 (Ala.1979), where the Supreme Court of Alabama held that the administrative remedy need not be exhausted when a class action is brought challenging a tax as illegal and void. However, the court in *Thorn* relied upon *Graves v. McDonough,* 264 Ala. 407, 88 So.2d 371 (1956), where the administrative remedy provided by statute gave aggrieved taxpayers only twenty days in which to object to the tax, as compared with the three-year period for filing claims under § 47–1586j.

ber 17, 1977, to pursue their statutory remedy with some hope that they might be successful. Even following the trial court decision upholding the tax, the possibility of reversal endured until the appeals process was completed.[6] During the period of litigation, extensive efforts were exerted, by mail and by publication, to inform taxpayers of the need to file a claim; and the trial court expressly held such notice to be sufficient. The trial court's orders of October 27, 1977 and January 3, 1979 made it clear to appellants that individual claims for refund were a necessary precondition to collecting refunds, yet appellants did not appeal from those orders. In fact, appellants conceded the necessity of claims for refund soon after the October 27 order issued. (Record at 84–85.)

In addition, although without question the District had "notice" of the class action challenging the legality of the tax, absent the expected filing of claims at the administrative level, the District could not know the full extent of its liability for refunds and could not plan its budget accordingly. As we noted in *Keyes, supra,* 362 A.2d at 736–37, the financial interests of the District and the public interest would not be served by allowing taxpayers in such a case to bypass the statutory procedures for refund.

■ Finally, appellants cite to *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and urge (Brief at 35) that even were we to conclude § 47–1586j required individual taxpayers for 1975 and 1976 to file refund claims, nevertheless the three-year limitation period for filing the administrative claims should be deemed tolled from the time the class action was filed in April 1976 until this court's ruling on appeal as to the applicability of § 47–1586j to the instant

case. Appellants also cite to decisions in class action discrimination cases, *see, e.g., Barrett v. United States Civil Service Commission,* 439 F.Supp. 216 (D.D.C.1977), in which the equitable tolling doctrine for class actions has been held to toll the limitations period for administrative complaints. However, in determining in any given instance whether a statute of limitations should be tolled, we must examine the legislative purposes behind the limitation provision to determine whether they are effectuated by the tolling. *Timoni v. United States,* 135 U.S.App.D.C. 407, 412, 419 F.2d 294, 299 (1969), *citing Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965).

■ The policy considerations which favor a tolling of the limitation periods in discrimination suits brought under remedial statutes are not present in the context of a challenge to a tax statute. As we have said, *supra* at 734, tax statutes are to be strictly construed. In addition, one of the important purposes served by the three-year filing deadline for tax refund claims is a practical one—to protect the District against financial instability by setting a date certain by which the District may know the precise extent of its liability for refunds. *See supra,* at 735; *District of Columbia v. Keyes, supra,* 362 A.2d at 736–37.

Moreover, implicit in the Supreme Court's opinion in *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), was the view that tolling is proper with respect to a particular cause only for so long as the class action continues to protect that cause. Once a final ruling adverse to the class is entered and becomes appealable, tolling is no longer proper.[7]

---

**6.** Accordingly, we do not find persuasive appellants' argument that a requirement of strict compliance with the statute is fundamentally unfair.

**7.** In *United Airlines,* the Supreme Court held that, where class certification had been denied

early in a case but was not appealable until final judgment, and where the named parties had declined to appeal from that order, post-judgment intervention by putative class members was permissible for purposes of appealing the denial of class certification. 432 U.S. at 394–96, 97 S.Ct. at 2469–2471. In so holding,

■ Here, the trial court in October 1977 ruled that those taxpayers who paid the tax for 1975 were entitled to refunds "provided they have complied with or comply with . . . § 47–1586j." In January 1979, the trial court ruled that appellant Kleiboemer's claim for refund filed on behalf of the class did not comply with § 47–1586j. Thus, the issue of the applicability of § 47–1586j to the members of the class was raised early on and was susceptible to appeal by appellants.[8] Under these circumstances we cannot agree that compliance with the statute was tolled solely by reason of the fact that appellants pursued their challenge to the validity of the tax.

Accordingly, we find no error in the trial court's September 1981 ruling that the timely filing of individual claims for refund at the administrative level was a prerequisite to recovery of refunds following this court's decision that the tax was unlawful.

### III

■ We turn next to the second statute in question, § 47–2413(c), which provides in pertinent part as follows:

[I]f it is determined by the . . . Superior Court that there has been an overpayment of any tax . . . interest shall be allowed and paid on the overpayment . . . *from the date the overpayment was paid until the date of refund,* but with respect to that part of any overpayment which *was not assessed and paid as a deficiency or as additional tax interest shall be al-*

*lowed and paid only from the date of filing a claim for refund or a petition to the Superior Court . . . .*

(Emphasis added.) The trial court here concluded that under the statute interest on the District's refund of taxes paid by the nonresidents (and determined to have been unlawfully imposed) was to be computed only from the date each such taxpayer filed his claim for refund rather than from the date such taxpayer paid the tax which this court invalidated. Appellants concede (Brief at 43) that most of the taxpayers who paid the tax did *not* pay as the result of an assessment of deficiency by the District. Accordingly, we are constrained by the express language of the statute set forth above to uphold the trial court's ruling that interest on the taxpayer's payment of the tax, not assessed as a deficiency or as additional tax, must run from the date the taxpayer filed a petition or claim for refund, rather than from the date the taxpayer overpaid the tax.

However, appellants (Brief at 43) point to the fact that they filed in the trial court pleadings challenging the validity of the tax at issue "prior to April 15, 1976, the earliest date on which any of the taxes involved were deemed to have been paid." They argue from this fact that the District was "apprised" at this early date of its potential liability to the taxpayers for the return—with interest—of the tax paid, should it be declared to have been illegally imposed. Therefore, appellants urge, they

---

the Court noted that, once the order became final and appealable, it was "critical" that the appeal was taken promptly: "In short, as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected . . . [respondent] promptly moved to intervene to protect those interests." *Id.* at 394, 97 S.Ct. at 2470.

8. To be appealable, an order must be final. D.C.Code § 11–721(a) (1981). However, final orders for purposes of the statute are not limited to final judgments which terminate the action. *Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810, 812 (D.C.1974). The test of finality is whether the orders requiring individual compliance with § 47–1586j disposed entirely of that

issue; or whether they were "open, unfinished, or inconclusive," or were "but steps towards final judgment." *See Crown Oil and Wax Company of Delaware v. Safeco Insurance Co. of America,* 429 A.2d 1376, 1379 (D.C.1981); *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979), *quoting Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Applying these principles to the two orders here, we conclude that they were final and appealable with respect to the applicability of § 47–1586j to the instant case. We do not view the October 27 order as having reconstituted the class for purposes of challenging the legality of the tax.

met the purpose of the statute, as reflected by its history,[9] *viz.*, to alert the District to its potential liability; and that by reason of the petitions filed interest should be paid from the date of overpayment or the due date of the return, whichever is later.[10]

The House and Senate committee reports do not, in our view, suggest that § 47–2413(c) should be given any construction other than its plain meaning. They refer to the District's being apprised of the fact that "an" overpayment has been claimed, thus suggesting that individual claims or petitions were intended. Further, the language of the committee reports does not indicate that mere notice that the taxing statute has been challenged will be sufficient to comply with § 47–2413(c). Individual claims are needed, as we have discussed, *supra* at 735, so that the District will know the exact amount of refunds actually claimed and can plan accordingly. Since we are interpreting and applying a statute which is clear on its face, and since appellants have not persuaded us that the language of the statute admits of more than its natural meaning, we are obliged to apply § 37–2413(c) as written. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); 2A Sutherland, Statutes And Statutory Construction § 46.01 (1973).

Therefore, we also affirm the trial court's ruling that interest on the amounts refunded to the taxpayers in the instant case who did not pay the tax because of an assessment of deficiency runs from the respective dates they filed their claims for refund,

9. *See* H.R.Rep. No. 1977, 82d Cong., 2d Sess. 4 (1952); S.Rep. No. 1471, 82d Cong., 2d Sess. 4 (1952).

10. Appellants also point to the fact that the statute refers to the filing of either a claim *or* a petition to the Superior Court, and that the words "by the taxpayer," included in § 47–1586j, are conspicuously absent from § 47–2413(c). (Reply Brief at 8.) It is therefore arguable that the class action petition filed by appellant Kleiboemer triggered the allowance of interest for the entire class. However, we must construe the statute as a whole, in context, according to common understanding of its

rather than from the dates they paid the tax.

Accordingly, there being no error in either of the challenged rulings, the judgment of the trial court is affirmed.

*So ordered.*

terms. Although § 47–2413(c) does not expressly require that a petition or claim be filed "by the taxpayer," it refers only to "an" overpayment or "the" overpayment, and references in every other subsection of § 47–2413 are to "the taxpayer." Moreover, there is no indication whatsoever in the legislative history of § 47–2413 that Congress had anything other than the filing of a claim or petition by the individual taxpayer in mind when it enacted § 47–2413.

