**Otis BOND, Appellant,**

v.

**Russell SERANO, et al., Appellees.**

**No. 88–280.**

District of Columbia Court of Appeals.

Argued Oct. 4, 1989.
Decided Nov. 13, 1989.

Marc Fiedler, with whom Patrick M. Regan and David M. Schloss, Washington, D.C., were on the brief, for appellant.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the memorandum was filed, Charles L. Reischel, Deputy Corp. Counsel, and Mary L. Wilson, Asst. Corp. Counsel, Washington, D.C., were on the memorandum in lieu of brief filed for appellees.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

The Superior Court dismissed appellant's suit for personal injury against the District of Columbia and other defendants on the ground that the three-year statute of limitations governing such actions had expired. Appellant concedes that the statute of limitations had run, but urges this court to apply principles of equitable tolling and to hold that his earlier suit against the District of Columbia filed in the United States District Court for the District of Columbia, alleging the same cause of action, but which had been dismissed by that court for lack of subject matter jurisdiction, tolled the statute of limitations for purposes of his Superior Court suit. Concluding that we are bound by a previous decision of this court rejecting a functionally identical argument, *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C.1966), we uphold the order of the trial court dismissing appellant's complaint.

I.

On August 27, 1983, appellant was involved in a collision with two other vehicles including a District of Columbia police car. Appellant gave the required notice to the District of Columbia (the District) of the circumstances of his negligence claim, D.C. Code §§ 1–1213 & 12–309 (1987), and on August 14, 1986, filed a complaint alleging

negligence in the United States District Court for the District of Columbia against the District and three individuals. On September 8, 1986, the District moved to dismiss the complaint for lack of diversity jurisdiction over the District of Columbia in federal court. On September 12, 1986, appellant filed an identical complaint in the Superior Court of the District of Columbia. The District moved to dismiss this suit on the ground that the District of Columbia's three-year statute of limitations for negligence actions, D.C.Code § 12–301(8) (1989), had expired on August 27, 1986.

On November 26, 1986, the trial court denied the District's motion to dismiss the Superior Court suit without prejudice to its renewal after the pending federal action was decided. On January 6, 1987, the United States District Court ruled that pendent party jurisdiction over the District of Columbia in a diversity action was proper; the court relied primarily on a decision of the district court in an unrelated case and a prior panel decision of the United States Court of Appeals for the District of Columbia Circuit which had been vacated *en banc*.[1] On June 5, 1987, however, the United States Court of Appeals for the District of Columbia Circuit, in an unrelated case, held that federal courts may not exercise pendent party jurisdiction over the District of Columbia in a diversity action.[2] In response to this holding, the district court *sua sponte* dismissed the District of Columbia as a defendant in appellant's federal suit, leaving the suit intact against the individual defendants. On July 2, 1987, the District renewed its motion to dismiss the instant case in Superior Court on the basis of the statute of limitations.

The trial court rejected appellant's claim that the pendency of the federal action tolled the statute of limitations. The court noted that this case involved an ordinary negligence claim arising from an automobile accident on August 27, 1983, to which the three-year statute of limitations applied. It further pointed out that appellant did not claim that he had been unable to discover his cause of action earlier (*i.e.,* invoke the so-called "discovery rule") or contend that the District of Columbia had been responsible for his failure to heed the statute of limitations in his Superior Court suit. Rather, appellant argued that his federal suit embodying an identical claim should toll the statute of limitations with regard to his Superior Court action. Citing decisions of several other courts, appellant urged the court to apply a species of equitable tolling and rule that the statute of limitations is tolled by the pendency of a suit filed in another court in the reasonable (though in hindsight mistaken) belief that jurisdiction was proper. The trial court found this position to have "considerable intuitive appeal" because District of Columbia law favors resolving claims on the merits, and because the District government had conceded that the primary purposes underlying statutes of limitations—protection against stale claims, surprise, and loss of evidence—were not immediately implicated in this case. The court concluded, nevertheless, that "basic considerations … militate against creating a new exception to the statute of limitations."

First, the court determined that the statute of limitations "is inherently an arbitrary strict rule providing a definite termination of the time period within which an injured party may file suit," and should not entail "a case-by-case review of the equities of individual situations." Second, the court pointed out that this court "has not created a general equitable exception to the statute of limitations" and, in those situations where it has allowed exceptions, "has emphasized that the exceptions are narrow." Finally, the court concluded that "creating

---

1. The unreported district court decision was *Biscoe v. Arlington County,* C.A. No. 80–0766 (D.D.C. Jan. 22, 1981) (Greene, J.). The appellate court decision was *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 563 F.2d 462 (1977), *vacated, reinstated in part,* 188 U.S.App.D.C. 384, 580 F.2d 647 (1977) (*en banc*). In reinstating the judgment on other grounds, the United States Court of Appeals for the District of Columbia Circuit did not reach the issue of pendent party jurisdiction over the District of Columbia in a diversity suit.

2. *Long v. District of Columbia,* 261 U.S.App.D.C. 1, 820 F.2d 409 (1987).

a new exception to the statute of limitations, and balancing the competing claims of individual equity against the need for a definite rule, are matters of policy which are more appropriately decided by the legislature." The trial court therefore dismissed the complaint with prejudice.

## II.

Appellant, relying primarily on decisions of other courts,[3] urges this court to hold that equitable tolling may relieve a plaintiff of the consequences of failure to comply with the statute of limitations where: (a) the original suit filed, although dismissed without prejudice, gave timely notice to the defendant of the plaintiff's cause of action; (b) there was no prejudice to the defendant in gathering evidence to defend against the second claim; and (c) plaintiff acted reasonably and in good faith in prosecuting the first action and diligently in filing the second.

In *Namerdy v. Generalcar, supra,* however, this court rejected a contention not materially distinguishable from appellant's. The plaintiff there sued the defendant in the courts of New York for failure to pay four installments of a debt under an agreement that had been negotiated by the parties in New York. Personal jurisdiction could not be obtained in New York, however, and when the defendant was traced to Washington, D.C., plaintiff brought suit there in the court of General Sessions on the debt. As to the first installment, the defendant raised the defense that it was barred by the three-year statute of limitations because the installment was due on April 17, 1961, and suit had not been filed in the District of Columbia until April 23, 1964.

This court began by noting the settled rule that where a debt is payable in independent installments, the right of action accrues upon each installment as it matures. The court then dealt with plaintiff's claim that, although the statute of limitations had strictly run on the installment in

question, the statute "was tolled by the timely filing of a suit in New York and by general principles of estoppel and fundamental justice." *Id.* at 113 (emphasis added). Apparently deeming no further discussion of the point to be necessary, the court dismissed this argument by observing that "[t]here is no basis for finding that filing suit in another jurisdiction tolls the statute of limitations here.... Recovery on the first installment was thus barred by limitations." *Id.*

Appellant seeks to distinguish *Namerdy* on the ground that the court rejected a claim of "equitable estoppel," not the theory of equitable tolling appellant advances. This argument is unpersuasive. The court in *Namerdy* was asked specifically to hold that the filing of suit in New York on the same cause of action tolled the statute of limitations for purposes of the District of Columbia suit. The court found "no basis" for such a principle and held that the statute of limitations barred suit on the installment in issue. Appellant further notes that *Namerdy* has not been cited by this court again on the statute of limitations issue, and that may be true. But the decision has not been overruled. As a division of this court, we are bound by it. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). Two members of the division, however, believe that the issue may be worthy of *en banc* consideration.

Accordingly, the order of the trial court dismissing the complaint is

*Affirmed.*

FARRELL, Associate Judge, concurring:

Appellant learned too late that you cannot obtain pendent party jurisdiction over the District of Columbia in a diversity action in federal court. Meanwhile, the statute of limitations had run on his cause of action in Superior Court, where the suit should have been filed. He asks to be relieved of the consequences of his mistake by citing equitable considerations, includ-

---

3. *E.g., Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327 (1985); *Collier v. City of Pasadena,* 142 Cal.App.3d 917, 191 Cal.Rptr. 681 (1983); *Galli-* *gan v. Westfield Centre Serv., Inc.,* 82 N.J. 188, 412 A.2d 122 (1980).

ing the reasonableness of his (mistaken) belief that subject matter jurisdiction lay in district court and the inability of the District of Columbia to point to concrete prejudice from his failure to file suit in timely fashion in Superior Court. This court holds that *Namerdy v. Generalcar,* 217 A.2d 109, 113 (D.C.1966), forecloses this argument, and I agree. Even if *Namerdy* were not controlling, however, I would have serious difficulty in granting appellant the relief he seeks. Although I may yet be persuaded that we can do what is both gratifying and correct in adopting the species of equitable tolling appellant urges, I set out in the following my strong reservations about the propriety of such a course. My view at this time is that we simply are not at liberty, as a coequal branch of government, to adopt a broad tolling exception to the time limitation which the legislature has placed on the right to litigate.

### I.

"Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). They embody "the judgment of most legislatures and courts" that "there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the factfinding process or to upset settled expectations that a substantial claim will be barred without respect to whether it is meritorious." *Id.; see also Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). For this reason, the Maryland Court of Appeals has correctly observed that the rule concerning tolling of statutes of limitations is "one of strict construction." *Walko v. Burger Chef Systems, Inc.,* 281 Md. 207, 210, 378 A.2d 1100, 1101 (1977). As the United States Supreme Court said in a case involving a federal cause of action:

> [Statute of limitations] periods are established to cut off rights, justifiable or not, that might otherwise be asserted and

they must be strictly adhered to by the judiciary. Remedies for resulting inequities are to be provided by Congress, not the courts.

*Kavanagh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947) (citation omitted). *See also Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (citation omitted) ("In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law").

This court's own decisions, although recognizing that the shield provided by statutes of limitations "has never been regarded as what is now called a 'fundamental' right," *Ehrenhaft v. Malcom Price, Inc.,* 483 A.2d 1192, 1202 (D.C.1984) (quoting *Chase Securities Corp., supra,* 325 U.S. at 314, 65 S.Ct. at 1142), have been cautious in permitting exceptions to the strict operation of the statute of limitations. So, for example, we have applied the principle, traceable in this jurisdiction to *Hornblower v. George Washington University,* 31 App.D.C. 64 (1908), that a defendant cannot assert "the bar of the statute of limitations, if it appears [the defendant] has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run...." *Id.* at 75. In *Bailey v. Greenberg,* 516 A.2d 934 (D.C. 1986), we reviewed succeeding cases in this jurisdiction applying the "lulling" doctrine and found that they "have interpreted the principle narrowly." *Id.* at 937. On the other hand, where the legislature has not expressed its will, as in the case of determining when a cause of action accrues for statute of limitations purposes, *Bussineau v. President and Director of Georgetown,* 518 A.2d 423, 436 (D.C.1986), we have been generous in applying the "discovery rule" so as "to prevent the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress...." *Id.* at 430; *see Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C.1989) (summarizing applications of the

rule). Here too, however, in refusing to extend the rule to contexts in which its purpose does not apply, we have emphasized the "pervasive legislative judgment" which statutes of limitations embody "that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Woodruff v. McConkey,* 524 A.2d 722, 727 (D.C.1987), *quoting United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979) (internal quotation marks omitted).

## II.

In the present case, appellant asks us to take what I consider a giant step beyond our previous decisions and adopt a broad concept of equitable tolling that excuses the plaintiff's failure to obey the statute of limitations when a court determines, notwithstanding, that the essential purposes of the statute have been met. Aware of the potential breadth of an equitable tolling doctrine applied to non-induced plaintiff mistake, appellant offers a narrower rule of tolling which begins with the assumption that plaintiff has timely filed his action in *some* court, and then asks whether there has been:

(1) timely notice to the defendant in filing the first claim;

(2) lack of prejudice to the defendant in gathering evidence to defend against the second claim;

(3) reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action.

*Hosogai v. Kadota,* 145 Ariz. 227, 230, 700 P.2d 1327, 1333 (1985).

Appellant acknowledges that this species of equitable tolling is contrary to the traditional rule "that if a plaintiff mistakes his remedy, in the absence of any statutory provision saving his rights, or where from any cause a plaintiff becomes nonsuit or the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred." *Willard v. Wood,* 164 U.S. 502, 523, 17 S.Ct. 176, 181, 41 L.Ed. 531 (1896). He argues, however, that this rule has been eroded by the passage of time and by the Supreme Court's decision in *Burnett v. New York Cent. R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), and that, in any event, we are free to adopt a rule more flexibly designed to take account of the equities of enforcing limitations in particular cases of plaintiff error.

As the court's opinion makes clear, we would not be writing on a clean slate by accommodating appellant's argument. Indeed, besides our decision in *Namerdy, supra,* we have cited—although ultimately not had to apply—the rule of *Willard v. Wood* in one other case. More instructively, however, two decisions of the United States Court of Appeals for the District of Columbia Circuit, applying local District of Columbia law, have effectively concluded that both the courts and the legislature in the District of Columbia would not favor an equitable tolling exception of the kind appellant advocates. It is useful first to summarize these decisions.

## III.

As the court's opinion indicates, *Namerdy* rejected an argument that timely filing of the plaintiff's suit in the New York courts tolled the statute of limitations in the District of Columbia. The court did so in a case where—unlike this one—it appears that subject matter jurisdiction properly lay in the court of first filing; the action in New York failed only because, "despite the diligent efforts of the process server, [defendant] could not be found in that jurisdiction." *Namerdy, supra,* 217 A.2d at 111.

We next had occasion to treat the question whether the pendency of an earlier-filed suit tolls the statute of limitations for purposes of a later suit in *York & York Construction Co. v. Alexander,* 296 A.2d 710 (D.C.1972). In that case a plaintiff-corporation appealed the denial of its motion under Super.Ct.Civ.R. 60(b) to reinstate a suit for breach of contract which had been dismissed without prejudice because of the corporation's failure to pay certain statutory fees. Citing *Willard v. Wood, supra,* and other cases, this court pointed out that,

"[u]nder the general rule [of *Willard* ], the statute of limitations is not tolled by the pendency of an action which is voluntarily dismissed without prejudice," and that "[i]n this case, the action was involuntarily dismissed at a time when, if the general rule applied, a new action would be barred by the statute of limitations...." 296 A.2d at 712. The court expressed no doubt that the general rule would apply in this jurisdiction; the only issue before it was whether "voluntary and involuntary dismissals without prejudice should be treated the same for purposes of tolling the statute of limitations...." *Id.* The court pretermitted that issue, however, because it found that the corporation's failure to pay the fees (since remedied) disabled it from maintaining suit only so long as the fees were unpaid; once it paid them, the suit could be reinstated as if never dismissed, and "no statute of limitations question would be presented." *Id.*

In *Dupree v. Jefferson*, 215 U.S.App.D.C. 43, 666 F.2d 606 (1981), the United States Court of Appeals for the District of Columbia Circuit was required to decide the issue left unanswered by *York*, "whether, under District of Columbia law, the statute [of limitations] is tolled during pendency of a suit ultimately dismissed involuntarily without prejudice...." *Id.* at 45, 666 F.2d at 608.[1] The court concluded that *York* itself had "held that the pendency of an action *voluntarily* dismissed without prejudice does not interrupt the running of the statute of limitations." *Id.* at 47, 666 F.2d at 610–11 (emphasis in original) (footnote omitted). The court found no reason to treat an involuntary dismissal differently, noting that "the decisions cited by *York* reasoned that a dismissal without prejudice does not operate as an adjudication upon the merits, and thus leaves the situation the same as if suit had never been brought. In effect, ... there was nothing to suspend the operation of the limitation period." *Id.* at 48, 666 F.2d at 611. Thus, "the pivotal question is whether the dismissal was with or without prejudice, not whether it was voluntary or involuntary," and on that point the court was confident that *York* had resolved the issue. *Id.*

As appellant points out, the same court in *Carter v. Washington Metro. Area Transit Auth.*, 246 U.S.App.D.C. 221, 764 F.2d 854 (1985), recognized that *Dupree* had somewhat overstated the effect of *York*, since the purported "holding" of *York* was dictum on the facts of that case. 246 U.S.App.D.C. at 223, 764 F.2d at 856.[2] But as Judge McGowan also observed for the court in *Carter, York* "certainly does not disapprove as a principle of local law the general doctrine set forth by the Supreme Court in *Willard v. Wood...*." *Id.* The court pointed out that while refusing to toll the statute of limitations when the plaintiff has mistaken his remedy "may be a harsh or even arbitrary result, finality of outcome, regardless of the merits of the claim, is exactly the purpose of the statute of limitations that the legislature has enacted." *Id.* at 224, 764 F.2d at 857, *citing Kavanagh v. Noble, supra.* The court observed that many state legislatures have mitigated the harshness of limitations periods by enacting transfer provisions (for improper venue) or saving provisions (excusing other procedural errors). The District of Columbia, by contrast, "has enacted no such provisions. We must thereby infer that the District of Columbia particularly wishes that its statute of limitations be respected." *Id.* The court cited decisions of this court both "forc[ing] plaintiffs to

---

**1.** *Dupree* was a suit against the District of Columbia government and numerous police officers for alleged violation of constitutional rights. The parties treated the case, however, as though the local three-year statute of limitations controlled, and the court of appeals proceeded on that assumption. 215 U.S.App.D.C. at 47 n. 24, 666 F.2d at 610 n. 24.

**2.** The facts in *Carter* did not require the circuit court to apply "the specific rule of *Dupree*—that the suit of a plaintiff who mistakes his remedy does not toll the statute of limitations—" because the trial court in plaintiff's original suit, filed in Superior Court, had *mistakenly* dismissed for lack of jurisdiction, and the matter had been reinstated by this court. Nevertheless, the circuit court pointed out, plaintiff's federal suit would be barred if the pendency of the local suit did not toll the District of Columbia's three-year statute of limitations for purposes of her suit in federal district court.

adhere strictly to the requirements of the statute of limitations," and excusing compliance "when the inequity of enforcing the statute in all its exactitude is particularly glaring." *Id.* (citing the lulling/concealment and discovery rules adverted to above). In refusing to relax "the general rule of strict application" on the facts of *Carter*, the court needed to go no further than point out that in that case dismissal of the federal action was not depriving the plaintiff of "access to any court" since plaintiff's suit was still pending in Superior Court. *Id.* at 225, 764 F.2d at 858; *see* note 2, *supra*.

Appellant maintains that *Carter* assists his argument because, unlike there, dismissal in the present case denies him access to any court insofar as the liability of the District of Columbia is concerned. The fact, however, that the court in *Carter* was required only to "choose not to exempt from the statute of limitations a plaintiff to whom remedies remain available in another court," *id.*, does not imply that it would have reached a contrary result had those remedies not survived, given its understanding that the District of Columbia "particularly wishes that its statute of limitations be respected." Moreover, appellant's effort to turn *Carter* to his advantage points up a fundamental difficulty, to which I will return later, with the equitable tolling exception. As the trial court pointed out in this case, dismissing appellant's claim against the District of Columbia in local court did not leave him nonsuit against the remaining three defendants in federal district court. To appellant's reply that the "prime tortfeasor" in the accident was the District of Columbia, the court countered that the exercise of discretionary power to preclude the District from relying on the statute of limitations would be "especially inappropriate" since waivers of sovereign immunity must be strictly con-

strued, citing *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C.1981).

It is not important for my purpose who had the upper hand in this debate about the significance of the District of Columbia's role as defendant in this case. The point is that, to condition the decision whether to toll the statute of limitations on just how harsh the effect of plaintiff's error may be, not merely runs doctrinally against the grain of statutes of limitations—which enforce finality at the cost of harsh results—but would entangle trial judges in a painstaking analysis of the "equities" of given situations without, I submit, any promise of correct results.

## IV.

*Carter* and *Dupree* are not, of course, binding on this court in their assessment of District of Columbia law regarding statutes of limitation generally or its hospitability to the equitable tolling doctrine. We cannot, however, brush aside the judgment of five of our federal colleagues [3] that District of Columbia law would not favor a court-fashioned exception to limitations for plaintiff mistake. I observe too that Maryland has rejected the doctrine. In *Walko v. Burger Chef Systems, Inc., supra,* the court of appeals found the rule appellant urges to be contrary to "the legislative intent expressed in the statute of limitations...." 281 Md. at 211, 378 A.2d at 1102. Pointing out that Maryland, like the District of Columbia, is one of a minority of states lacking a "saving" statute, the court drew from this the conclusion that the statute of limitations "reflects a legislative judgment of what is deemed an adequate period of time in which a person of ordinary diligence should bring his action." *Id.* at 211 n. 2, 215, 378 A.2d at 1102 n. 2, 1104.[4]

---

3. Chief Judge Wald participated in both decisions.

4. Appellant argues that the absence of a statutory saving provision proves little as to the legislature's will in the District of Columbia because there is no evidence that the Council of the District of Columbia considered and rejected such ameliorative solutions. However, there

was no evidence of this kind before the court in *Walko* either. Furthermore, as the trial court pointed out in the present case, the legislature in the District *has* seen fit to mitigate the harshness of the statute of limitations in particular situations. *See* D.C.Code § 12–302 (1981) (limitations period tolled due to disability of plaintiff); § 12–303 (period tolled due to absence of

A rule which excuses failure to heed the statute of limitations when suit has been timely filed in *some* court, though the wrong one, arguably would be a disincentive to the "ordinary diligence" requirement that statutes of limitations embody. I recognize the countervailing claim of unfairness when one such as appellant, in reliance on an unsettled state of the law at the time, misjudges his forum but still gives notice of his claim roughly adequate to alert the defendant to the need to prepare. One is enticed, therefore, to agree with the Supreme Court of New Jersey, in adopting equitable tolling for plaintiff error, that "[a] just accommodation of individual justice and public policy requires that in each case the equitable claims of opposing parties must be identified, evaluated and weighed." *Galligan v. Westfield Centre Service, Inc.*, 82 N.J. 188, 193, 412 A.2d 122, 124 (1980) (citation and internal quotation marks omitted). But I believe we must resist the temptation. In my view it is itself a question of "public policy," and one for the legislature to decide, whether and under what circumstances the need for certainty and finality expressed in statutes of limitations should yield to claims of individual equity.[5]

When courts apply the doctrines of lulling and concealment to toll the statute of limitations, they do more than apply an ancient rule of fairness—one, for example, "read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Likewise, as the United States Court of Appeals recognized in *Carter*, when this court applies the discovery rule, it does no more than recognize the precept of basic justice that a cause of action cannot accrue—and hence cannot begin the statutory clock—if by reasonable diligence

the plaintiff could not have learned of its existence. By contrast, a decision that a plaintiff who has filed suit in the wrong court may not be bound by the statute of limitations until in each case "the equitable claims of opposing parties [are] identified, evaluated and weighed," risks confusing the obligation of courts to do fundamental justice with a court's own private sense of what is proper "policy about the privilege to litigate." *Chase Securities Corp. v. Donaldson, supra.*

On balance, then, I think we must reject as an impermissible inroad on the legislature's authority the principle that a good faith but mistaken filing of a lawsuit forgives a later failure to heed the statute of limitations, if, on balancing the competing claims of fairness, the court finds that dismissal is "unnecessary", *Galligan, supra*, 82 N.J. at 192, 412 A.2d at 124, and too drastic in its effect. Courts possess no such generalized authority to depart from the legislative mandate. *See id.* at 199–200, 412 A.2d at 128 (Pollock, J., dissenting). Indeed, in a case principally relied on by appellant, *Burnett v. New York Cent. R.R. Co., supra*, 380 U.S. at 426, 85 S.Ct. at 1053, it was precisely to effectuate the legislative purpose that the Supreme Court declined to impose finality on the plaintiff's mistake in the manner by which he brought his action.

In *Burnett*, the plaintiff filed a jurisdictionally proper action in the Ohio state courts under the Federal Employers' Liability Act. The suit was dismissed, however, because venue was improper and Ohio law made no provision for transfer to a court of proper venue. Plaintiff then brought an action in federal district court, which that court dismissed because the statute of limi-

---

defendant from jurisdiction). Its failure to follow the lead of the many states which have adopted a broader exception, therefore, hardly seems inadvertent.

**5.** Put differently, it is for the legislature to balance the hardship resulting from strict application of technical, seemingly arbitrary rules of repose against the fact that, as three members of the Supreme Court stated recently, "A technical rule with equitable exceptions is no rule at all."

*Jones v. Thomas,* —— U.S. ——, 109 S.Ct. 2522, 2533, 105 L.Ed.2d 322 (1989) (Scalia, J., with whom Brennan and Marshall, JJ., join, dissenting) (discussing Double Jeopardy Clause, "the embodiment of technical, prophylactic rules" that may "frustrate[ ] justice in the particular case, but for the greater purpose of assuring repose in the totality of criminal prosecutions and sentences").

tations had meanwhile expired. The court of appeals affirmed.

In reversing that decision, the Supreme Court began by recognizing that "the basic inquiry is whether the Congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Id.* at 427, 85 S.Ct. at 1054. Pointing out repeatedly that plaintiff's action had been brought in a court of proper jurisdiction, *e.g., id.* at 425, 429, 436, 85 S.Ct. at 1053, 1055, 1058, the Court acknowledged that "[b]oth federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run." *Id.* at 430, 85 S.Ct. at 1055. The Court also found that tolling the statute of limitations in these circumstances "effectuates the basic congressional purposes in enacting this humane and remedial Act [the FELA], as well as those policies embodied in the Act's limitation provision...." *Id.* at 427–28, 85 S.Ct. at 1054–55. Whereas "a major reason for having a federal limitation provision [in the FELA] was to achieve national uniformity," failure to permit tolling when venue was defective would yield inconsistent results depending on whether suit was brought in federal court (where transfer of venue is permitted), a state court similarly allowing transfer, or a state court without a transfer provision. *Id.* at 433–34, 85 S.Ct. at 1057–1058. Since, in addition, "the humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so," *id.* at 434, 85 S.Ct. at 1057, the Court concluded that "a uniform rule tolling the federal statute for the period of the pendency of the state court action ... is fair to both plaintiff and defendant, carries out the purposes of the FELA and best serves the policies of uniformity and certainty underlying the federal limitations provision." *Id.* at 435–36, 85 S.Ct. at 1058–59.

In *Kleiboemer v. District of Columbia,* 458 A.2d 731, 735 (D.C.1983), we echoed *Burnett's* acknowledgement that the legislative purpose may favor tolling of the limitation period in suits "brought under remedial statutes," citing *Timoni v. United States,* 135 U.S.App.D.C. 407, 412, 419 F.2d 294, 299 (1969), *in turn citing Burnett, supra.* The three year catch-all statute of limitations in this jurisdiction, however, reveals no such legislative purpose to suspend its effect during the pendency of a suit filed in a court lacking subject matter jurisdiction. *See Spannaus v. United States Department of Justice,* 643 F.Supp. 698, 703–04 (D.D.C.1986), *aff'd,* 272 U.S. App.D.C. 325, 824 F.2d 52 (1987). On the contrary, as the Maryland Court of Appeals reasoned, here "the legislative intent [is] expressed in the statute of limitations itself...." *Walko, supra,* 281 Md. at 211, 378 A.2d at 1102. This is not, in other words, a situation—as in the case of the discovery rule—where there is "no expression of legislative intent to assist us in construing when a cause of action accrues," and thus "the question is one for judicial resolution, absent legislative limitation." *Bussineau v. President and Directors of Georgetown, supra,* 518 A.2d at 436. The situation here is fully the reverse: there is an express legislative limitation, and a court may not, in my opinion, relax its effect absent evidence that depriving a plaintiff of his remedy would defeat some legislative purpose. A contrary result would amount to "amending the statute by judicial, rather than legislative, action." *Galligan v. Westfield Centre Service, Inc., supra,* 82 N.J. at 197, 412 A.2d at 127 (Pollock, J., dissenting).

### V.

I am especially reluctant to adopt a broad rule of equitable tolling when a plaintiff like appellant has it within his power to avoid loss of his cause of action by filing a protective suit in the court where jurisdiction indisputably lies—in this case just across the plaza. Though I impute no bad faith to appellant, the fact is that he waited until two weeks before the statute of limitations ran to file a federal suit on diversity grounds in a case presenting, as the trial court recognized, a garden-

variety negligence claim. Appellant responds that to insist on duplicate filings in two courts would spawn wasteful litigation, but I am unable to see how that "inefficiency" is greater than requiring a case-by-case, multi-pronged inquiry into the equities of enforcing the statute of limitations whenever plaintiff loses on his jurisdictional wager in the original court.

Moreover, beyond the fact that the Superior Court can employ measures such as a stay to minimize the costs of a protective filing, *see Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975), I am not convinced that requiring a plaintiff to give notice of his claim by filing suit in a court of acknowledged jurisdiction while also pursuing it in a court of uncertain jurisdiction is wasteful. It is one thing for a person to be apprised of the need to prepare a defense by a suit actually filed in a court with jurisdiction; it is quite another to be put on notice by the *hypothetical* possibility that suit will be filed in the event the claim is dismissed in the only court where it is pending. An obvious purpose of statutes of limitations is to allow parties to plan for litigation and allocate resources based on realistic predictions. Requiring a defendant to wager on the likelihood that suit will be filed in the correct forum *if* an action elsewhere is dismissed without prejudice, therefore, does not necessarily accord with fair play. Assume a case such as the present one, for example, where the plaintiff has sued multiple defendants in another court, as to one of which there is an open question of jurisdiction. That defendant may fairly conclude that if it prevails jurisdictionally, plaintiff will be satisfied to pursue its remedy against the remaining defendants and not bear the costs of a separate action in a second court. Whether or not that scenario is realistic in this case (where it is apparent the District of Columbia had the "deepest pocket") is beside the point: many imponderables stand between a hypothetical lawsuit and an actual one. It is thus too facile to suggest that so long as suit is filed in one court, the defendant is on notice to prepare for suit wherever it eventually may be brought. Moreover, in a case such as this, where plaintiff is required by law to notify the government-defendant of his claim more than a specified length of time before filing any suit, *see* D.C.Code § 1–1213, it can as readily be argued that notice of *that* kind ought to be sufficient to toll the statute of limitations. The boundaries of adequate notice are thus not easy to define.

As this discussion already suggests, arriving at the "equitable" result when the plaintiff claims that the statute of limitations has been tolled by the filing of a timely but defective lawsuit is a troublesome task. Easy assertions as to what is adequate to provide notice are misleading. In other respects as well, an equitable tolling exception can immerse trial courts in a difficult, and even inconclusive, attempt to find the appropriate result despite the plaintiff's responsibility for his own misfortune. One might concede that, at least in cases where the plaintiff's successive filings involve the same claim, it will not be hard to determine whether the defendant was "prejudice[d] ... in gathering evidence to defend against the second claim." *Hosogai v. Kadota, supra*, 145 Ariz. at 230, 700 P.2d at 1333.[6] The same frequently will not be true, however, of the additional inquiry the trial judge must make of whether the plaintiff acted "reasonably", though mistakenly, in prosecuting the first action. *Id.*

Under that criterion, the trial judge must decide *how* mistaken plaintiff was in previously bringing a defective suit. In the present case, for example, the inquiry would have to be whether, despite the ultimate rejection of his position by the United States Court of Appeals, appellant had reasonable grounds to suppose that the feder-

---

**6.** As my previous discussion makes clear, however, even when the defendant cannot point to faded memories or other evidence lost as a result of plaintiff's untimely filing of the second suit, time and resources will have been expended seeking dismissal of the first suit which could have better been used preparing a defense on the merits in the court where suit should have been brought initially.

al courts would sustain pendent party jurisdiction over the District of Columbia in an action based on diversity of citizenship. One could argue at length—and the parties have done so—over whether appellant was careless in banking on a favorable answer to this question, especially when an alternative remedy lay across the street. My point, however, is that such inquiries into the reasonableness of an attorney's misjudgment will often be inconclusive, especially when—as here—to decide the issue the judge must venture well outside his or her normal areas of expertise.

In short, the multi-factored inquiry that appellant urges into the basic fairness of enforcing the statute of limitations in a given case, by its indeterminacy, can lead to inconsistent and hence inequitable results. Consequently, I think Judge Richter put the matter right in concluding:

> Plaintiff took a calculated risk in assuming that pendent party jurisdiction over the District of Columbia would be sustained in an area in which the law was unsettled. Having taken a chance that jurisdiction would be sustained and lost, it hardly seems inequitable to deny plaintiff relief from his mistake when filing suit in Superior Court was clearly open to him from the outset.